SLR:LDM
F.#: 2013V02622



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,

              Plaintiff,

       -against-

APPROXIMATELY SIXTY NINE (69) ROUGH
DIAMONDS SEIZED AT JOHN F. KENNEDY
INTERNATIONAL AIRPORT ON MARCH 15,
2013,

           Defendants in rem.

- - - - - - - - - - - - - - - - - - - - - -X

**VERIFIED COMPLAINT
IN REM**

Civil Action No.

Plaintiff, UNITED STATES OF AMERICA, by its attorney LORETTA E.

LYNCH, United States Attorney for the Eastern District of New York, Laura D. Mantell,

Assistant United States Attorney, of counsel, for its verified complaint in rem hereby alleges

upon information and belief as follows:

## PRELIMINARY STATEMENT

1.      This is a civil action seeking forfeiture of approximately sixty nine (69) rough

diamonds (the "Diamonds") seized by U.S. Customs and Border Protection ("CBP") officials at

John F. Kennedy International Airport ("JFK") in Queens, New York on March 15, 2013.  The

Diamonds entered the United States from France without a Kimberley Process Certificate and

were not sealed in a tamper-resistant container, in violation of the Clean Diamond Trade Act

("CDTA"), codified at 19 U.S.C. §§ 3901, et seq., and regulations issued by the Office of

Foreign Assets Control ("OFAC"), 31 C.F.R. §§ 592.101, et seq.  Further, the Diamonds were not declared to CBP, as required by 19 C.F.R. § 148.13.

2.      The United States seeks to forfeit and condemn the Diamonds to the United States pursuant to 19 U.S.C. § 3907(b), 31 C.F.R. § 592.601(a)(3), 19 U.S.C. § 1497(1)(a), and 19 U.S.C. § 1595a.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4.      Venue lies in the Eastern District of New York pursuant to 28 U.S.C. §§ 1355 and 1395, in that the acts and omissions giving rise to the forfeiture occurred in the Eastern District of New York.

## STATUTORY AND REGULATORY PROVISIONS

A.  Regulation of Trade in Rough Diamonds

5.      In 2003, Congress passed the CDTA as part of an international effort to eliminate the trade in rough diamonds from illegitimate sources, as the trade has been linked to, among other things, funding the overthrow of legitimate governments, the subversion of international efforts to promote peace and stability, and the commission of gross human rights violations.  The CDTA provides that "[t]he President shall prohibit the importation into, or exportation from, the United States of any rough diamond, from whatever source, that has not been controlled through the Kimberley Process Certification Scheme [("KPCS")]."

6.      Pursuant to Executive Order 13312, 68 Fed. Reg. 45151, the CDTA went into effect on July 29, 2003.  OFAC subsequently issued implementing regulations that prohibit the importation into, or exportation from, the United States on or after July 30, 2003 of any rough

2

diamond that has not been controlled by the KPCS. 31 C.F.R. § 592.201. OFAC regulations further provide that shipments of rough diamonds imported into, or exported from, the United States must be sealed in a tamper-resistant container. 31 C.F.R. § 592.301(a)(2).

7.      The KPCS is an international scheme designed to detect and prevent the international trade of diamonds from illegitimate sources. As set forth in the "Interlaken Declaration on Kimberley Process," dated November 5, 2002, the KPCS prescribes standards, practices and procedures for the certification of rough diamonds and the regulation of their importation to, and exportation from, participating nations.

8.      Specifically, under the KPCS, participating nations are required to validate a "Kimberley Process Certificate" for each exportation of rough diamonds to insure that the rough diamonds were obtained from a legitimate source. Participating nations require importers to provide a Kimberley Process Certificate upon the entry of any rough diamonds. Both the United States and the European Union are parties to the Interlaken Declaration and participants in the KPCS.

9.      Section 3907(b) of Title 19 and 31 C.F.R. § 592.601(a)(3) both provide that the "customs laws of the United States, both civil and criminal, including those laws relating to seizure and forfeiture, that apply to articles imported in violation of such laws shall apply with respect to any rough diamond imported in violation of the [CDTA]."

10.      Pursuant to 19 U.S.C. § 1595a(c), merchandise which is introduced or attempted to be introduced into the United States contrary to law may be seized and forfeited if (A) its importation or entry is subject to any restriction or prohibition which is imposed by law relating to health, safety, or conservation and the merchandise is not in compliance with the applicable rule, regulation, or statute, or (B) its importation or entry requires a license, permit or other

3

authorization of an agency of the United States and the merchandise is not accompanied by such license, permit, or authorization.

B. <u>Customs Declaration Requirements</u>

11.     Pursuant to 19 C.F.R. § 148.11, all articles brought into the United States by any individual must be declared to a CBP officer at the port of first arrival in the United States.

12.     Pursuant to 19 C.F.R. § 148.13, unless CBP accepts the oral declaration of the person arriving in the United States, the declaration required of a person arriving in the United States shall be in writing on a Customs Declaration, Customs Form 6059–B, and shall list all articles acquired abroad that are in his or her possession at the time of arrival and the value thereof. Certain personal effects, such as wearing apparel, which are entitled to duty free entry, need not be itemized on the Customs Declaration.

13.     Pursuant to 19 CFR § 148.13(e), each written declaration shall be acknowledged by the declarant before the CBP officer who examines the baggage covered by the declaration.

14.     Pursuant to 19 C.F.R. § 148.15, articles that are not personal in character and which are not included on the Customs Declaration must be entered pursuant to a Customs entry.

15.     Title 19, Code of Federal Regulations, Section 148.18 states that "[a]ny article in the baggage of a passenger arriving from a foreign country which is not declared as required . . . shall be seized."

16.     Pursuant to 19 U.S.C. § 1498, Customs regulations further prescribe the requirements for the declaration and entry of merchandise.

17.     Customs regulations set forth in 19 C.F.R. Parts 141 and 142 describe the requirements for entering merchandise into the United States. Unless exempt, all goods must be entered with CBP.

4

18.     The entry process, as described in 19 C.F.R. Parts 141 and 142, includes the filing of certain documents by the importer or the importer's representative with CBP at the time the merchandise arrives at the port of entry or shortly thereafter.  Entry documents and information enable CBP to maintain custody and control over the merchandise until CBP has determined that it may be released into the commerce of the United States.

19.     Title 19, Code of Federal Regulations, Section 142.3 sets forth the entry documents that are required to be presented to CBP to secure the release of merchandise. Title 19, Code of Federal Regulations, Section 142.3(b) states that CBP or other Federal, State or local agencies may require other documents for certain merchandise.

20.     Pursuant to 19 CFR § 141.0a, CBP uses the entry summary information to: (i) determine whether the merchandise is prohibited or restricted from entering the commerce of the United States; (ii) determine an importer's liability for duty; (iii) determine whether other requirements of law and regulation have been met; and (iv) collect and report trade statistics.

21.     As set forth in NOTE 4 to 19 C.F.R. § 592.301, any diamond, regardless of value, that is described in subheadings 7102.10, 7102.21 or 7102.31, Harmonized Tariff Schedule of the United States and is imported into the United States shall not be released from the custody of CBP except by a formal entry for consumption, as defined in 19 C.F.R. § 141.0a(f) of the CBP regulations.

22.     Pursuant to 19 C.F.R. § 141.0a(f), "entered for consumption" means that an entry summary for consumption has been filed with Customs in proper form, with estimated duties attached.

23.     Pursuant to 19 U.S.C. § 1499, imported merchandise that is required by law or regulation to be inspected, examined, or appraised shall not be delivered from customs custody

(except under such bond or other security as may be prescribed by the Secretary to assure compliance with all applicable laws, regulations, and instructions) until the merchandise has been inspected, appraised, or examined and is reported by the Customs Service to have been truly and correctly invoiced and found to comply with the requirements of the laws of the United States.

24.      Pursuant to 19 U.S.C. § 1499, if otherwise provided by law, detained merchandise may be seized and forfeited.

25.      Title 19, United States Code, Section 1497(a) authorizes the forfeiture of any articles that are not included in the declaration and entry.

## FACTS

26.      On March 15, 2013, Hawa Bah, a citizen of Guinea, arrived at JFK on a flight from France with the Diamonds.  Upon her arrival, Bah carried the Diamonds in small cloth bags that were contained inside a larger makeup bag.

27.      The Diamonds are properly classified under subheading 7102.31 of the Harmonized Tariff Schedule of the United States.

28.      A CBP official asked Bah if she was carrying any items that were required to be declared and she responded that she was not.

29.      Bah completed and signed a Customs Declaration, CBP Form 6059-B, stating that she did not have any items or merchandise that was required to be declared.

30.      Bah did not file with CBP an Entry Summary, Customs Form 7501, or any other entry documentation for the Diamonds.  Bah also failed to file a formal Customs entry with CBP for importation of the Diamonds.

6

31.    Upon inspection, a CBP official found the Diamonds.  The CBP official asked Bah, who claimed to own a diamond mining company in Guinea, to produce a Kimberley Process Certificate for the Diamonds.

32.    Bah failed to produce a Kimberley Process Certificate for the Diamonds.

33.    The Diamonds were not sealed in a tamper-resistant container.

34.    CBP lawfully seized the Diamonds.

## FIRST CLAIM FOR RELIEF
### (19 US.C. § 1595a(c)(2)(B))

35.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 34 above

36.    Section 1595a(c)(2)(B) of Title 19 provides for the seizure and forfeiture of merchandise if "its importation or entry requires a license, permit or other authorization of any agency of the United States Government and the merchandise is not accompanied by such license, permit, or authorization."

37.    OFAC regulations require that each importation of rough diamonds comply with the KPCS, including the KPCS requirement that a Kimberley Process Certificate accompany each importation of rough diamonds.

38.    As the Diamonds were not accompanied by a Kimberley Process Certificate, their importation was not authorized by OFAC or by CBP.

39.    As a result of the foregoing and pursuant to 19 U.S.C. § 1595a(c)(2)(B), the Diamonds are subject to forfeiture and condemnation to the United States.

## SECOND CLAIM FOR RELIEF
### (19 U.S.C § 1595a(c)(2)(A))

40.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 34 above

41.    Section 1595a(c)(2)(A) of Title 19 provides for the seizure and forfeiture of merchandise if "its importation or entry is subject to any restriction or prohibition which is imposed by law relating to health, safety, or conservation and the merchandise is not in compliance with the applicable rule, regulation, or statute."

42.    In passing the CDTA and thereby adopting the KPCS, Congress made express findings that funds derived from the trade in rough diamonds have been linked to, among other things, the overthrow of legitimate governments, the subversion of international efforts to promote peace and stability, and the commission of gross human rights violations.

43.    As such, the CDTA's and OFAC regulations' prohibition on the importation of rough diamonds that are not regulated by the KPCS and requirement that the diamonds be sealed in a tamper-resistant container relate to health and safety concerns.

44.    As the Diamonds were not accompanied by a Kimberley Process Certificate and were not sealed in a tamper-resistant container, their importation was in violation of prohibitions and requirements imposed by law relating to health and safety concerns.

45.    As a result of the foregoing and pursuant to 19 U.S.C.§ 1595a(c)(2)(A), the Diamonds are subject to forfeiture and condemnation to the United States.

8

## THIRD CLAIM FOR RELIEF
### (19 U.S.C § 1497(a)(1))

46.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1
through 34 above.

47.     Section 1497(a)(1) of Title 19 provides for the forfeiture of "[a]ny article which:
(A) is not included in the declaration and entry as made or transmitted; and (B) is not mentioned
before examination of the baggage begins: (i) in writing by such person, if written declaration
and entry was required, or (ii) orally, if written declaration and entry was not required."

48.     Bah presented a signed Customs Declaration to CBP that did not include the
Diamonds.

49.     Bah did not file an Entry Summary or any entry documentation with CBP which
was required for the importation of the Diamonds.

50.     As a result of the foregoing and pursuant to 19 U.S.C. § 1497(a)(1), the Diamonds
are subject to forfeiture and condemnation to the United States.

WHEREFORE, plaintiff requests that a warrant of this Court issue for the arrest
of the Diamonds; that notice of these proceedings be given to all persons known or thought to
have an interest in or right against the Diamonds; that the Diamonds be forfeited to the use and
benefit of the United States of America; and that the plaintiff be awarded its costs and

9

disbursements in this action; and for such other relief as this Court deems just and proper.

Dated:   Brooklyn, New York
         January 22, 2014

                                        LORETTA E. LYNCH
                                        United States Attorney
                                        Eastern District of New York
                                        Attorney for Plaintiff
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201

                        By:    _____
                                        Laura D. Mantell (LM 6767)
                                        Assistant United States Attorney
                                        (718) 254-6253

## VERIFICATION

1.      I am a Special Agent with U.S. Immigration and Customs Enforcement and, as such, have knowledge of the facts underlying the above-captioned action.

2.      I have read the within Verified Complaint in rem and know the contents thereof.

3.      The factual matters contained in the within Verified Complaint in rem are true and accurate to the best of my knowledge, information, and belief.

4.      The source of my information and the grounds for my belief are my personal knowledge and information provided by other law enforcement officers and agency personnel.

I declare under penalty of perjury as provided by 28 U.S.C. ' 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:      Jamaica, New York
            January 22, 2014

                                    _____
                                    Special Agent David Mondanaro
                                    U.S. Immigration and Customs Enforcement